Kim B. SMITH and Benefrida Smith, Individually and as Parents and Next Friend of Bryant Smith, a Minor, Appellants,

v.

Tam NGUYEN, M.D., Appellee.

No. A14–92–01309–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 3, 1993.

Rehearing Denied June 24, 1993.

Robert J. Talaska, Richard N. Countiss, Houston, for appellants.

T. Marc Calvert, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and ELLIS and LEE, JJ.

## OPINION

ELLIS, Justice.·

This is an appeal from a summary judgment. Appellants, Kim and Benefrida Smith, filed suit against appellee, Dr. Tam Nguyen, and Memorial Southwest Hospital for alleged medical malpractice during the birth of their minor son, Bryant. The hospital was dismissed from the lawsuit and is not a party to this appeal. After the Smiths failed to timely designate experts, the trial court granted Dr. Nguyen's Motion for Summary Judgment. The Smiths' raise six points error, contending the trial court erred in striking their experts and in granting summary judgment. We reverse and remand.

The Smiths filed this suit on January 28, 1991. Approximately six months later, the trial court issued a Docket Control Order which set the case for trial on March 1, 1993. That order also established a deadline for the Smiths to designate their experts by January 27, 1992, and for Dr. Nguyen and Memorial Southwest Hospital to designate their experts thirty days later. On November 22, 1991, Dr. Nguyen moved for summary judgment. An affidavit by Dr. Nguyen was attached to the motion. Five days later, counsel for Dr. Nguyen agreed to pass the submission of his summary judgment motion to allow the Smiths' attorney an opportunity to depose Dr. Nguyen. Despite the agreement by the parties to pass the submission, the trial court mistakenly granted summary judgment for Dr. Nguyen on January 10, 1992, seventeen days before the deadline for designation of experts. On January 29, 1992, the Smiths moved to vacate the summary judgment. On February 3, 1992, the trial court granted the Smiths' unopposed motion. A few days later, the Smiths filed a Motion to Amend the Docket Control Order. The motion and attached order did not specify a date certain for the designation of experts but merely requested "additional time." On February 21, 1993, the trial court granted the Smiths' motion but inserted hand-

written changes in the order to require the Smiths to designate their experts by May 1, 1992. It also required Dr. Nguyen and Memorial Southwest Hospital to designate their experts "thirty days thereafter." A short time later, the Smiths' attorney received a postcard from the court stating that it had granted the "Motion for Extension of Time." However, neither the order signed by the court nor an Amended Docket Control Order was ever served on the Smiths' attorney.

In the months that followed, the Smiths' attorney made several attempts by telephone and correspondence to contact Dr. Nguyen's attorney for the purpose of scheduling the deposition of Dr. Nguyen and agreeing on a "new" Docket Control Order. Dr. Nguyen's deposition was not taken until May 28, 1992. By letter dated May 27, 1992, Dr. Nguyen's attorney informed the Smiths' attorney that the "original" Docket Control Order was still in effect except to the extent that the deadline for designation of experts had been extended to May 1, 1992. Subsequently, Dr. Nguyen timely designated his experts and filed an Amended Notice of Submission of his previously filed Motion for Summary Judgment. On June 12, 1992, the Smiths filed a response to the motion for summary judgment and attached the affidavit of Dr. Bernard Nathanson. On June 19, 1992, Dr. Nguyen moved to prohibit the Smiths from designating experts and to strike Dr. Nathanson's affidavit because Dr. Nathanson had not been designated by the May 1 deadline. The Smiths did not properly designate their experts, including Dr. Nathanson, until June 24, 1992, fifty-four days after the deadline but approximately eight months before trial. On August 17, 1992, after the parties had exchanged responses and replies, the trial court struck the Smiths' experts and granted summary judgment for Dr. Nguyen. The trial court subsequently denied the Smiths' Motion for Reconsideration and Motion for New Trial.

█ In their first two points of error, the Smiths contend that the trial court erred by failing to serve the Amended Docket Control Order under Tex.R.Civ.P. 21a and

abused its discretion by refusing to allow them to designate their expert eight months before trial. In support of their contention, the Smiths cite *Loffland Bros. Co. v. Downey,* 822 S.W.2d 249 (Tex.App.—Houston [1st Dist.] 1991, orig. proceeding). There, counsel for relators-defendants was never served with the docket control order and did not learn of the order until twenty-three days after the deadline for designation of experts. 822 S.W.2d at 250–51. After noting that there was nothing in the record to reflect whether the docket control order had been filed in the trial court's file, the First Court of Appeals rejected the argument that relators were not entitled to notice of the order. 822 S.W.2d at 251. Observing that standard docket control orders are the only notice to attorneys of matters crucial to the outcome of litigation and that failure to comply with the service requirements of rule 21a constitutes a denial of a party's right to be heard in a contested case, the court held that such orders fall within purview of TEX.R.CIV.P. 21a and that relators failed to receive adequate notice pursuant to the rule. *Id.* The court went on to hold that the trial court abused its discretion by refusing to allow relators to designate experts eight months before trial. 822 S.W.2d at 252.

The court did not hold as the Smiths contend that failure to serve the docket control order pursuant to rule 21a was *per se* reversible error. It merely held that a party is entitled to notice of a docket control order either by the presence of the order in the court's file or in the absence of such a filing, by service pursuant to rule 21a. We agree with Dr. Nguyen that the instant case is distinguishable because the order amending the Docket Control Order was present in the court's file and a matter of public record. Because the Smiths' attorney was chargeable with notice of that order, we find that he was not entitled to service pursuant to rule 21a. *See Pentikis v. Texas Elect. Serv. Co.,* 470 S.W.2d 387, 390 (Tex.App.—Fort Worth 1971, writ ref'd n.r.e.). In addition, *Loffland* was a mandamus proceeding and the court found an abuse of discretion in part because the relators had no adequate remedy at law in view of the fact that a trial without the introduction of expert testimony would have been an empty exercise. 822 S.W.2d at 851–52. Hence, we find that *Loffland* is not controlling. We overrule the Smiths' first two points of error.

In points of error three through five, the Smiths contend the trial court abused its discretion by imposing a "death penalty" sanction that was neither "just" nor "appropriate" and that violated their due process rights. The legitimate purposes of discovery sanctions are threefold: (1) to secure compliance with discovery rules; (2) to deter other litigants from similar misconduct; and (3) to punish violators. *Chrysler Corp. v. Blackmon,* 841 S.W.2d 844, 849 (Tex.1992) (orig. proceeding) (*citing Bodnow v. City of Hondo,* 721 S.W.2d 839, 840 (Tex.1986)). While the above objectives continue to be valid reasons for imposing sanctions, those considerations alone cannot justify a trial by sanction. *Chrysler Corp.,* 841 S.W.2d at 849. The choice of sanctions under the rules is left to the sound discretion of the trial court. *See TransAmerican Natural Gas v. Powell,* 811 S.W.2d 913, 917 (Tex.1991) (orig. proceeding) (*citing Bodnow,* 721 S.W.2d at 840); TEX.R.CIV.P. 215. However, when the sanctions are so severe as to preclude presentation of the merits, that discretion is limited by the requirement that the sanctions be "just." *Chrysler Corp.,* 841 S.W.2d at 849; *TransAmerican,* 811 S.W.2d at 917–18.

A sanction is "just" if: (1) there is a direct relationship between the offensive conduct and the sanction imposed; that is, the sanction must be directed against the offender or abuse and toward remedying the prejudice caused the innocent party, and (2) it is not excessive; that is, the punishment should fit the crime. *TransAmerican,* 811 S.W.2d at 917. Sanctions which terminate or inhibit the presentation of the merits of a party's claim are authorized by the rules even though the effect of such sanctions is to adjudicate claims or defenses, not on the merits, but on the manner in which a party or his attorney has conducted discovery. *Braden v. Dow-*

*ney*, 811 S.W.2d 922, 929 (Tex.1991) (orig. proceeding). Severe sanctions are sometimes necessary to prevent an abusive party from thwarting the administration of justice by concealing the merits of a case. *Id.* However, such sanctions must be reserved only for those circumstances in which a party has so abused the rules of procedure, despite imposition of lesser sanctions, that the party's position can be presumed to lack merit and it would be unjust to permit the party to present the substance of that position before the court. *Id.* (*citing TransAmerican*, 811 S.W.2d at 918). Severe sanctions are inappropriate in the absence of a party's bad faith or counsel's callous disregard for the responsibilities of discovery under the rules. *TransAmerican*, 811 S.W.2d at 918. Even then, lesser sanctions must first be tested to determine whether they are adequate to secure compliance, deterrence, and punishment of the offender. *Chrysler Corp.*, 841 S.W.2d at 849.

■ Because expert medical testimony is ordinarily required to prove liability for medical malpractice, we agree with the Smiths' assertion that the trial court's refusal to allow them to designate experts was essentially a "death penalty" sanction that precluded them from presenting the merits of their claim. *See Peters v. Moore*, 835 S.W.2d 764, 768 (Tex.App.—Houston [14th Dist.] 1992, orig. proceeding); *see also Wendenburg v. Williams*, 784 S.W.2d 705, 706 (Tex.App.—Houston [14th Dist.] 1990, writ denied) (*citing Hart v. Van Zandt*, 399 S.W.2d 791, 792 (Tex.1965)). Accordingly, we must decide whether such a sanction was just.

In the instant case, there is nothing in the record to suggest that anyone other the Smiths' attorney was responsible for the untimely designation of experts. The conduct of Kim and Benefrida Smith is not in any way implicated apart from entrusting legal representation to their attorney. *See TransAmerican*, 811 S.W.2d at 917. Also, there is no evidence that the Smith's attorney acted with callous disregard for his responsibilities under the discovery rules. Dr. Nguyen argues to the contrary because the Smiths' attorney violated two court orders. While counsel for the Smiths indeed missed two court-imposed deadlines for the designation of experts, his conduct did not amount to a willful disregard of the rules of discovery. First of all, it is apparent from the record that the Smiths' attorney mistakenly believed that the Smiths' cause of action as well as the "original" Docket Control Order were no longer viable after the trial court erroneously granted summary judgment in favor of Dr. Nguyen. In fact, the Docket Control Order was viable at the time of the initial summary judgment because Memorial Southwest Hospital was technically still a party to the lawsuit even though the Smiths' Fourth Amended Original Petition reflected that the hospital's liability stemmed almost entirely from Dr. Nguyen's alleged negligence. Indeed, the hospital was dismissed from the suit a short time later. Despite counsel's error, no sanctions were sought and counsel moved promptly to vacate the summary judgment and extend the deadline for designation of experts. Second, the postcard notice to the Smiths' attorney did not inform him of the new deadline for designation of experts, especially where the order *submitted* with the Motion to Amend Docket Control Order did not specify a deadline. While the Smiths' attorney should have checked the court's file, his failure to do so did not reflect a conscious disregard of the court's order. Dr. Nguyen asserts that the Smiths' counsel, as a seasoned medical malpractice attorney, should have known that the court would not give him unlimited time to designate an expert. The Smiths aptly point out that their attorney had no reason to believe that the court would sign the order other than as submitted and that counsel would have been more likely to check the court's file had he not received any notice at all. Furthermore, it is obvious from the record that the Smiths' attorney desired to take the deposition of Dr. Nguyen to better evaluate the claim before designating experts and made numerous attempts to schedule that deposition under the mistaken belief that he merely had "additional time" to designate experts.

Finally, we agree with the Smiths that the sanction in this case was excessive. Because of their attorney's inadvertence and the trial court's ruling, the Smiths' were effectively denied the right to present their case. A trial in the absence of expert testimony presented by the Smiths would have been meaningless. That fact could not be more thoroughly demonstrated than by the trial court's decision to grant summary judgment. Dr. Nguyen asserts that after the Smiths' attorney failed to comply with the first deadline, the trial court imposed a less severe sanction by granting an extension of time for designation of experts. As we have described, the Smiths' attorney mistakenly assumed not only that the "original" Docket Control Order was no longer in effect after the trial court erroneously granted summary judgment, but also that the court had signed the order amending the Docket Control Order as submitted. There was not a repeated *willful refusal* to comply with discovery requests or orders and there is nothing in the record to reflect that the trial court considered a lesser sanction to the striking of experts. *See Pedraza v. Peters,* 826 S.W.2d 741, 745 (Tex.App.—Houston [14th Dist.] 1992, no writ). The extension of time to designate experts could hardly be considered a sanction in light of the initial summary judgment erroneously granted by the trial court.

■ In addition, Dr. Nguyen does not suggest how he would be prejudiced by the designation of experts, including Dr. Nathanson, eight months before trial and well within the time required by the Rules of Civil Procedure. *See Peters,* 835 S.W.2d at 767; *see also Pedraza,* 826 S.W.2d at 744–45; Tex.R.Civ.P. 166b(6)(b). Although supporting expert testimony is the core of the Smiths' cause of action, the conduct of the Smiths or their counsel under the circumstances does not justify a presumption that the Smiths' claim lacked merit and the introduction of expert testimony before the court would not be unjust. *See Chrysler Corp.,* 841 S.W.2d at 850; *see also Braden,* 811 S.W.2d at 929. Thus, the sanction imposed deprived the Smiths' of due process. *See TransAmerican,* 811 S.W.2d at 918;

*see also U.S. Fidelity and Guar. Co. v. Rossa,* 830 S.W.2d 668, 673 (Tex.App.—Waco 1992, writ denied). Having thoroughly reviewed the record, we find that the trial court's refusal to allow the Smiths' to designate experts did not meet the guidelines established by *TransAmerican* and was a clear abuse of its discretion. We sustain points of error three through five.

■ In their sixth point of error, the Smiths contend the trial court erred in granting the motion for summary judgment. Having determined that the trial court should have allowed the Smiths to designate experts, we must determine whether summary judgment was proper in light of Dr. Nathansons's affidavit. Dr. Nguyen asserts that his affidavit and deposition testimony resolves all factual disputes and that he is entitled to summary judgment even if Dr. Nathanson's testimony is allowed. A movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). In reviewing the summary judgment proof, evidence favorable to the non-movant is taken as true, the court indulging all inferences and resolving all doubts in the nonmovants favor. *Id.*

The Smiths alleged that Dr. Nguyen failed to utilize certain corrective measures when their son's right shoulder became lodged in the birth canal, resulting in permanent damage to their son's right shoulder and arm. In his affidavit, Dr. Nathanson noted that Benefrida Smith had a history of giving birth to a "macrosomic" or large infant and was at risk for delivery of another macrosomic infant with an accompanying risk of shoulder "dystocia," i.e., complications during delivery caused by the shoulder. He identified that Dr. Nguyen performed "downward traction," i.e., pulling on the infant's head, instead of "superpubic pressure and/or Wood's maneuver, and/or posterior arm delivery, and/or cleidotomy." Dr. Nathanson stated that Dr. Nguyen's failure to employ the latter techniques breached the proper standard of

medical care and proximately caused the injury to Bryant Smith. Dr. Nguyen acknowledged in his affidavit that the delivery was complicated when the child's shoulder became lodged in the birth canal. He stated only that he performed "various maneuvers" which allowed him to "successfully" deliver the child but that the child "unfortunately" developed shoulder dystocia. Dr. Nguyen concluded that his treatment of Benefrida and Bryant Smith conformed to the applicable standard of medical care.

In his Motion to Strike and Reply to Plaintiffs' Response to Defendant's Motion for Summary Judgment, Dr. Nguyen points to his deposition testimony that he applied "superpubic pressure" and attempted to use the other corrective measures but was unsuccessful because he was unable to fit his hand inside the patient as required. The order granting summary judgment recites that the trial court reviewed only the pleadings and affidavits. Because Dr. Nguyen's deposition was not considered by the trial court nor included in the summary judgment evidence, we cannot consider it now. *See Deerfield Land Joint Venture v. Southern Union Realty Co.*, 758 S.W.2d 608, 609–10 (Tex.App.—Dallas 1988, writ denied). Furthermore, Dr. Nguyen's motion is not summary judgment evidence. *See Nicholson v. Memorial Hospital Sys.*, 722 S.W.2d 746, 749 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). However, even if we were to consider the motion together with the affidavits, the evidence before the trial court plainly raised a fact issue as to whether Dr. Nguyen failed to perform the proper corrective measures to dislodge Bryant Smith's shoulder from the birth canal. Hence, summary judgment was improper. We sustain point of error six. Accordingly, we reverse the judgment and remand to the trial court for proceedings consistent with this opinion.