# Supreme Court of Texas

No. 22-0286

In re Chefs' Produce of Houston, Inc., and Mario Alberto Rangel, *Relators*

On Petition for Writ of Mandamus

**PER CURIAM**

The defendants in this personal-injury suit arising from a car accident petition for mandamus relief from the trial court's order striking their counteraffidavit served under Section 18.001 of the Civil Practice and Remedies Code. Relying on our opinion in *In re Allstate Indemnity Insurance Co.*, 622 S.W.3d 870 (Tex. 2021), the defendants argue that the trial court's order was an abuse of discretion for which they lack an adequate remedy by appeal. We agree and conditionally grant the writ.

## I. Background

Antonio Estrada was admitted to St. Luke's Medical Center for treatment after being involved in a car accident with Mario Rangel in Houston. At the hospital, Estrada complained of head, shoulder, neck, and rib pain along his right side. The hospital conducted x-rays of his right shoulder, chest, and ribs. All three x-rays came back negative.

The hospital also performed a CT scan of his spine, which indicated injuries.

Estrada later received a shoulder and back MRI at Memorial MRI and Diagnostics. The shoulder MRI indicated that he suffered from bicep tendinosis, which is caused by degeneration of the bicep tendon's collagen due to chronic overuse.

After the MRI, Estrada received pain-management care from DaVinci Pain Consultants, which administered a shoulder-block injection for his right shoulder pain. DaVinci indicated that it provided the injection to treat osteoarthritis, adhesive capsulitis, and rheumatoid arthritis, though Estrada's medical records did not indicate that he suffered from any of these conditions in his right shoulder.

Estrada sued Rangel and his employer, Chefs' Produce of Houston, Inc. (collectively, Defendants), alleging that Rangel's negligence caused the car accident and Estrada's resulting injuries. Estrada timely served an affidavit under Section 18.001 of the Civil Practice and Remedies Code, averring that he had incurred $19,321 in reasonable and necessary medical expenses because of the accident. Defendants timely served a counteraffidavit challenging the reasonableness and necessity of those expenses. Defendants retained Dr. Benny Sanchez—an anesthesiologist and pain-management doctor practicing in the Houston area—as its counteraffiant, attaching a copy of Dr. Sanchez's curriculum vitae as an exhibit to the counteraffidavit.

The counteraffidavit and CV collectively establish Dr. Sanchez's qualifications. He has practiced anesthesiology and pain management for over thirty years. In addition, he treats automobile-accident patients

2

as part of his practice. He is familiar with reasonable and necessary medical charges for pain management and anesthesiology care through his experience as a practicing physician.

In his counteraffidavit, Dr. Sanchez concluded that some of the care Estrada received was neither necessary nor reasonable. For example, based on imaging studies, Dr. Sanchez opined that Estrada had a preexisting shoulder injury that rendered the shoulder MRI unreasonable and medically unnecessary. Dr. Sanchez further opined that, based on his experience as a pain-management physician, Estrada's shoulder-block injection was similarly unreasonable and medically unnecessary. Finally, concerning other care that Dr. Sanchez agreed was medically necessary, he opined that the providers charged substantially inflated rates. To reach this opinion, he compared the amounts cited in Estrada's affidavit to three sources: the National Medicare Fee Guideline, the Healthcare Bluebook for the Houston area, and the cash price Dr. Sanchez charges his patients in his Houston-area practice.

The National Medicare Fee Guideline provides guidelines for determining the reasonable charge that Medicare will reimburse for various procedures. The Healthcare Bluebook is a national database of costs for medical services broken down by zip code. Dr. Sanchez's assessment of what constituted a reasonable fee was consistently higher than both the Medicare guideline price and his cash price.

Estrada moved to strike Dr. Sanchez's counteraffidavit and testimony. Estrada argued that the counteraffidavit improperly challenged the cause of Estrada's injuries, not the necessity of his

3

treatment. He further argued that Medicare rates and Dr. Sanchez's cash rates were unreliable methods for approximating a reasonable charge for medical services. The trial court granted the motion, striking Dr. Sanchez's counteraffidavit "and the statements, opinions, and testimony contained therein," and precluding Defendants from calling Dr. Sanchez as a witness to provide such testimony.

Over nine months after the trial court signed that order, we issued our opinion in *Allstate*, which substantially clarifies Section 18.001 practice. Shortly thereafter, Defendants moved the trial court to reconsider its order. The trial court denied the motion without stating its grounds, and a divided court of appeals denied Defendants' petition for writ of mandamus. ___ S.W.3d ___, 2022 WL 619680, at *1 (Tex. App.—Houston [14th Dist.] Mar. 3, 2022). Defendants now seek mandamus relief in this Court.

## II. Discussion

A party is entitled to mandamus relief if the trial court clearly abused its discretion and the party lacks an adequate remedy at law. *In re Gonzales*, 619 S.W.3d 259, 261 (Tex. 2021). A trial court abuses its discretion if it fails to apply a statutory requirement properly because courts have no discretion in determining what the law is or applying it to facts. *Id.* Here, the issue is whether the trial court properly applied Civil Practice and Remedies Code Section 18.001, which relates to proving the reasonableness of expenses a claimant seeks to recover.

### A. Abuse of Discretion

Generally, parties seeking to recover past medical expenses must prove that the amounts they paid or incurred are reasonable. *Allstate*,

4

622 S.W.3d at 87. Unless claimants avail themselves of the procedures outlined in Section 18.001, they must present expert testimony at trial to establish that their medical expenses are reasonable and necessary. *Id.* This is true even if the amount is undisputed. *Id.*

Section 18.001, however, allows claimants to present such evidence by an uncontroverted affidavit that complies with the statute. *See* TEX. CIV. PRAC. & REM. CODE § 18.001(b). To qualify, the affidavit must be prepared by the person who provided the medical services or the person in charge of the records showing that the claimant received the services and incurred the charges. *Id.* § 18.001(c). An uncontroverted affidavit under Section 18.001(b) is sufficient evidence—but not conclusive—that medical expenses are reasonable and necessary. *Allstate*, 622 S.W.3d at 881. At trial, defendants may still challenge—through evidence and argument—a claimant's assertion that medical expenses are reasonable or necessary. *Id.*

Section 18.001 also provides defendants a means to controvert the claimant's affidavit. In particular, a defendant can serve the claimant with a counteraffidavit that provides reasonable notice of the basis on which the defendant intends to controvert the reasonableness and necessity of the proffered medical expenses at trial. TEX. CIV. PRAC. & REM. CODE § 18.001(f). The counteraffiant must be "qualified, by knowledge, skill, experience, training, education, or other expertise, to testify in contravention of all or part of any of the matters contained in the initial affidavit." *Id.* In the face of a compliant counteraffidavit, the claimant may not reach the jury on the reasonableness and necessity of her medical expenses without expert testimony. In effect, the claimant's

evidentiary burden on that issue is the same as if the initial affidavit had never been served. *Allstate*, 622 S.W.3d at 877.

Defendants argue that the trial court clearly abused its discretion by striking Dr. Sanchez's counteraffidavit and testimony because the affidavit comports with Section 18.001(f)'s requirements. In response, Estrada argues that the counteraffidavit contains prohibited challenges to causation, fails to provide reasonable notice, and is unreliable.[1]

As noted, in *Allstate* we clarified many aspects of Section 18.001 practice, including what constitutes "reasonable notice" of the defendant's basis for controverting the initial affidavit's claims and whether the opinions expressed in a counteraffidavit must meet the standards for admissibility at trial. 622 S.W.3d at 877-80. In that case, Alaniz sued her insurer for failing to pay her underinsured motorist benefits. *Id.* at 873. Alaniz provided affidavits indicating she had incurred approximately $41,000 in reasonable and necessary medical expenses. *Id.* The insurer offered a counteraffidavit from a registered nurse with twelve years of medical billing review experience. *Id.* at 873-74. Alaniz moved to strike the counteraffidavit, arguing in pertinent part that it did not give reasonable notice of the basis of its conclusions and the nurse's opinions were unreliable. *Id.* at 874. We disagreed on both points. *Id.* at 879-80.

Addressing Section 18.001(f)'s "reasonable notice" requirement, we held that satisfaction of this requirement does not hinge on the admissibility of the counteraffiant's testimony. 622 S.W.3d at 879.

---

[1] Estrada does not claim Dr. Sanchez is unqualified to testify.

6

Rather, the trial court must determine whether the counteraffidavit allows the claimant to understand "the nature and basic issues in controversy and what testimony will be relevant," such that the claimant has "sufficient information to enable that party to prepare a defense or a response." *Id.*

Applying these principles here, we hold that Dr. Sanchez's counteraffidavit provides Estrada with the reasonable notice the statute requires. The counteraffidavit assesses the treatment Estrada received. Where Dr. Sanchez believes that Estrada received medically unnecessary treatment, Dr. Sanchez outlines the basis for his opinion. Where he believes that Estrada's treatment was medically necessary but billed at an inflated rate, Dr. Sanchez explains what data he used to formulate that opinion. If, as Estrada contends, the data Dr. Sanchez used to calculate a reasonable cost is unreliable, Estrada can make that argument either on a motion to exclude the testimony under *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 556 (Tex. 1995), or at trial on cross-examination. *See Allstate*, 622 S.W.3d at 880.

Estrada further argues that Dr. Sanchez's counteraffidavit impermissibly challenges causation and was thus properly stricken. However, a counteraffidavit's inclusion of an opinion on causation has no bearing on its validity under Section 18.001(f). True, the statute expressly provides that "[t]he counteraffidavit may not be used to controvert the causation element of the cause of action." TEX. CIV. PRAC. & REM. CODE § 18.001(f). But that does not mean that the presence of a causation opinion in an otherwise compliant counteraffidavit renders either the counteraffidavit or the opinion *invalid*; rather,

7

Section 18.001(f) simply clarifies that the causation opinion is not admissible solely by virtue of its inclusion in the counteraffidavit. Thus, provided that the counteraffidavit complies with Section 18.001(f), the counteraffidavit's mere inclusion of a causation opinion is not a proper basis for striking it.[2]

In sum, Dr. Sanchez's counteraffidavit easily satisfies Section 18.001(f)'s requirements, particularly in light of *Allstate*. As a result, the trial court clearly abused its discretion in striking the affidavit and Dr. Sanchez's testimony.[3]

## B. No Adequate Remedy by Appeal

In addition to showing an abuse of discretion, a party seeking mandamus relief must demonstrate that it lacks an adequate remedy by ordinary appeal. *Walker v. Packer*, 827 S.W.2d 833, 842 (Tex. 1992). Appellate review is inadequate when an erroneous discovery order vitiates or severely compromises a party's ability to present a viable claim or defense at trial. *Id.* at 843.

---

[2] We express no opinion on the merits of any challenge to the ultimate admissibility of the causation testimony in Dr. Sanchez's counteraffidavit.

[3] Estrada further argues that Defendants are not entitled to mandamus relief because they waited almost a year to seek reconsideration of and mandamus relief from the trial court's order. Estrada did not complain about Defendants' timeliness in either the trial court or the court of appeals, and, in any event, the argument is meritless. Defendants sought reconsideration and then mandamus relief shortly after we issued our opinion in *Allstate*, which firmly establishes that the trial court's original order striking Dr. Sanchez's counteraffidavit and testimony was erroneous. Seeking reconsideration—and when that failed, mandamus relief—in light of a significant, on-point opinion from the state's civil court of last resort is hardly dilatory.

8

In *Allstate*, we held that Allstate lacked an adequate appellate remedy where the order striking its counteraffidavit (1) allowed the claimant to avoid presenting expert testimony to support a finding of the reasonableness of her medical expenses, (2) excluded the counteraffiant's testimony on any issue, and (3) prohibited Allstate from challenging the reasonableness of the claimant's medical expenses at trial. 622 S.W.3d at 883 (holding that the order "would preclude Allstate from engaging in meaningful adversarial adjudication of [plaintiff's] claim for payment of medical expenses, vitiating or severely compromising Allstate's defense"). Estrada argues that the order here is narrower than the one at issue in *Allstate* because it does not include the wholesale prohibition against challenging the reasonableness of his medical expenses at trial. Defendants respond that the order's effect is the same because "[i]t prevents Defendants' only retained expert from testifying" about either the reasonableness of Estrada's medical costs or the medical necessity of the treatment he received.

We agree with Defendants that, if the order effectively forecloses them from presenting expert testimony at trial to challenge the reasonableness and necessity of Estrada's medical expenses, Defendants' ability to present a defense has been severely compromised and they in turn lack an adequate appellate remedy. *See In re Kings Ridge Homeowners Ass'n*, 303 S.W.3d 773, 786 (Tex. App.—Fort Worth 2009, orig. proceeding) (holding that the relator lacked an adequate remedy by appeal where the trial court struck its expert designation as untimely and the expert would have testified on matters essential to its claims); *Beamon v. O'Neill*, 865 S.W.2d 583, 585 (Tex. App.—Houston

9

[14th Dist.] 1993, orig. proceeding) (holding, in a personal-injury suit, that the defendants lacked an adequate remedy by appeal from the trial court's order striking their expert-witness designations as untimely where the "experts were to testify on key rebuttal issues such as the cause of the injury and damages").

Estrada's petition reflects that discovery in this case was to be conducted under a Level 3 discovery control plan, meaning that the discovery plan was to be "tailored to the circumstances of the specific suit" by court order. TEX. R. CIV. P. 190.4(a). Although the discovery control plan is not in the mandamus record, on June 24, 2022, we granted an emergency motion to stay the trial that had been reset for July 2022. Any extended deadline to designate experts necessarily passed before that date. Therefore, the trial court's order effectively forecloses Defendants from presenting expert testimony at trial on key rebuttal issues, including the reasonableness and necessity of Estrada's medical expenses.

### III. Conclusion

The trial court clearly abused its discretion by striking Dr. Sanchez's counteraffidavit and testimony, and Defendants lack an adequate remedy to address this error by appeal. As a result, without hearing oral argument, we conditionally grant Defendants' petition for writ of mandamus and order the trial court to vacate its order striking Dr. Sanchez's counteraffidavit and testimony. TEX. R. APP. P. 52.8(c). Our writ will issue only if the trial court fails to comply.

**OPINION DELIVERED:** April 21, 2023